T.C. Memo. 2005-52

UNITED STATES TAX COURT

HARLAN D. EDWARDS AND FLOORS BY HARLAN, JODY EDWARDS, TRUSTEE,
Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10458-02.                    Filed March 22, 2005.

Harlan D. Edwards and Floors by Harlan, Jody Edwards,

Trustee, pro sese.

<u>Matthew J. Bailie</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  In separate notices of deficiency, respondent

determined the following income tax deficiencies, additions to

tax, and penalty with respect to petitioners' Federal income taxes for 1998:[1]

Harlan D. Edwards:

|  | Additions to Tax | |
| Deficiency | Sec. 6651(a)(1)[1] | Sec. 6654 |
| $42,165 | $10,541 | $1,929 |

Floors by Harlan, Jody Edwards, Trustee:

|  | Penalty |
| Deficiency | Sec. 6662(a) |
| $30,232 | $6,046 |

[1] In his answer, respondent asserted a modification to the addition to tax under sec. 6651(a) determined in Harlan D. Edwards's notice of deficiency, proposing instead a revised amount under sec. 6651(a)(1) coupled with an addition to tax pursuant to sec. 6651(a)(2). On brief, respondent does not address the asserted sec. 6651(a)(2) addition. Accordingly, we deem respondent to have abandoned the position taken in the answer.

After concessions, the issues remaining for decision are:

(1) Whether income reported by petitioner Floors by Harlan, Jody Edwards, Trustee (Floors Trust), is includible in the gross income of petitioner Harlan D. Edwards (Harlan) because Floors Trust is a sham that is disregarded for Federal income tax purposes;

(2) whether Harlan failed to report income of $6,908;

---

[1] All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

(3) whether Floors Trust is entitled to deductions taken for rent, income tax expense, and income distributions;

(4) whether Harlan is liable for self-employment tax;

(5) whether Harlan is liable for an addition to tax pursuant to section 6651(a)(1); and

(6) whether Harlan is liable for an addition to tax pursuant to section 6654.

## FINDINGS OF FACT

The parties have stipulated some of the facts, which are incorporated herein by reference. Harlan resided and Floors Trust had an address in San Jose, California, at the time the petition was filed.

Before 1995, Harlan operated a vinyl floor installation business, known as Edwards Vinyl Floors (Edwards Vinyl), as a sole proprietorship. Harlan managed the business, owned its assets, and performed the installation work along with his son, Jody Edwards (Jody).

In January 1995, Harlan was the grantor of three trusts:[2] Floors Trust, Harwood Group Trust (Harwood Group), and Harwood Holding Co. Trust (Harwood Holding).

Harlan got the idea of putting his business and assets into trusts through the advice of Don Fletcher, a trust promoter who

---

[2] By use of the terms "trust", "trustee", "beneficiary", and other related terms, we intend no implication as to the validity of the trusts involved in this case.

Harlan met after attending a free seminar advertised in the newspaper.[3]

Floors Trust

At the time Floors Trust was created, Edwards Vinyl changed its name to Floors by Harlan, and all assets associated with the business were transferred to Floors Trust. There was no change in the manner in which Harlan conducted the activities of the flooring business after the name change and asset transfer. Harlan was appointed "manager" of the trust's business and had unrestricted access to the trust's assets. As manager, Harlan continued to make the same day-to-day managerial decisions for Floors Trust as he had made for Edwards Vinyl when he managed it as a sole proprietorship. No trustee imposed any requirements or made any demands with respect to the manner in which the flooring business was operated. Harlan and Jody performed the floor installation activities for Floors Trust, and payment for the services rendered by Harlan, as proprietor of a floor installation business, was provided to the trust. Harlan and Jody maintained a checking account in the name of "Floors by Harlan 'A Trust'", into which they deposited gross receipts from the floor installation business and over which they had signatory

---

[3] Mr. Fletcher was subsequently convicted of one count of conspiracy to defraud the United States and two counts of aiding and assisting in the preparation of false income tax returns, see United States v. Fletcher, 322 F.3d 508 (8th Cir. 2003), and was incarcerated at the time of trial.

authority.  Harlan or Jody signed all checks drawn on this account in 1998.

Jody was appointed trustee of Floors Trust at its inception and served as trustee in 1998.  Roland Mears (Roland) also served as trustee of Floors Trust at its inception.

The trust instrument for Floors Trust provides that a trustee who resigns "will sign and have witnessed a letter of resignation" that is made part of the trust agreement.  The trust instrument further provides that upon the resignation of a trustee, the appointment of a successor trustee "shall be upon the unanimous action of the remaining trustees".

On May 1, 1996, Roland purported to resign as trustee from Floors Trust, but his letter of resignation was not witnessed as required by the trust instrument.  On the same day, Roland purported to appoint Becky Mears (Becky) as a successor trustee by means of a document signed by Roland but not Jody, notwithstanding the trust instrument's requirement that successor trustees be appointed by the unanimous action of the remaining trustees.[4]

---

[4] The documents evidencing Roland's purported resignation and replacement by Becky were submitted by respondent as exhibits to his motion to dismiss Becky as a party for lack of jurisdiction, which was granted upon petitioners' failure to respond.  Petitioners have admitted in their brief the foregoing facts concerning the purported resignation and replacement.

The beneficiaries of Floors Trust were Jody, Harlan, Harwood Group, and Harwood Holding. Harlan originally held all 100 units of the beneficial interest of Floors Trust, but on February 1, 1995, he surrendered 94 of them to Jody and 2 units each to Harwood Holding and Harwood Group.

Harwood Holding

The beneficiaries of Harwood Holding were Harlan and Jody, as well as other children of Harlan; namely, Jacqueline Spellman, Greg Edwards (Greg), and Michael Edwards.[5]

Harwood Group

Upon his creation of Harwood Group, Harlan transferred to it his residence, which he owned outright, free of any mortgage indebtedness. Harwood Group's other assets included a television, a bedroom suite, three lounge recliners, and various other household furnishings. The beneficiaries of Harwood Group were Harlan, Jody, and Greg. The trustees of Harwood Group were Jody and Becky. As with Floors Trust, Harlan served as manager of Harwood Group. Additionally, Jody and Harlan were the only individuals who had authority to sign checks on the Harwood Group bank account.

The floor installation business did not change its location after its transfer to Floors Trust. The business and its assets

---

[5] The record establishes nothing further concerning Harwood Holding.

continued to be located at Harlan's residence. However, after the transfer of the residence to Harwood Group, Floors Trust paid Harwood Group $500 per month as rent for the use of the garage and a bedroom located in the residence. The rent was originally set at $800 per month, but at some time not disclosed in the record, it was reduced to $500 per month because Harlan concluded that Harwood Group did not require that much income. When Harlan was operating Edwards Vinyl as a sole proprietorship, the business did not pay rent for the use of the same space in the residence.

## Bartering Income

During 1998, Harlan was a member of two bartering clubs, American Barter Corp. and Tradeworld. In that year, Harlan received services from bartering valued at $5,359 and $11,375 from American Barter Corp. and Tradeworld, respectively.

## Returns

Floors Trust filed a Form 1041, U.S. Income Tax Return for Estates and Trusts, for the taxable year 1998. Harlan did not file a Form 1040, U.S. Individual Income Tax Return, for the 1998 taxable year.

### OPINION

I. Evidentiary Note

The record in this case is sparse. Petitioners attached several exhibits to their brief and made numerous factual

assertions therein.  However, unsupported statements in a brief
and exhibits that have not been properly admitted into evidence
at trial do not constitute competent evidence.  Rule 143(b);
Niedringhaus v. Commissioner, 99 T.C. 202, 214 n.7 (1992);
Viehweg v. Commissioner, 90 T.C. 1248, 1255 (1988); Castro v.
Commissioner, T.C. Memo. 2001-115.  Petitioners also complain in
their brief that Becky was "not permitted to speak".  The Court
did not permit Becky to speak on behalf of petitioners at
calendar call, as she had not entered an appearance on their
behalf and was not herself a party.[6]  However, petitioners were
free to call Becky as a witness at the trial but failed to do so.
The absence of her testimony is accordingly a circumstance of
their own making.

## II.  Burden of Proof

Petitioners contend that, pursuant to section 7491(a), the
burden of proof has shifted to respondent with respect to all
outstanding issues.

Generally, the burden of proof is on the taxpayer to show
that the Commissioner's determinations are erroneous.  See Rule
142(a); Welch v. Helvering, 290 U.S. 111 (1933).  However,
subject to certain limitations, section 7491(a) shifts the burden
of proof to the Commissioner with respect to any factual issue

---

[6] Becky's status as a party had been specifically addressed
before trial as a result of respondent's motion to dismiss her as
a party for lack of jurisdiction, which was granted.

relevant to ascertaining the tax liability of the taxpayer if the taxpayer introduces "credible evidence" with respect to the issue.

While the statute itself does not define "credible evidence", the legislative history states as follows:

> Credible evidence is the quality of evidence, which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness). * * * If after evidence from both sides, the court believes that the evidence is equally balanced, the court shall find that the Secretary has not sustained his burden of proof. [H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995.]

See also Blodgett v. Commissioner, 394 F.3d 1030 (8th Cir. 2005), affg. T.C. Memo. 2003-212.

As more fully discussed hereinafter, section 7491(a) has no effect on our findings with respect to most of the issues in this case, as our conclusions are based upon a preponderance of the evidence. See id. The exceptions concern the deductions for rent and taxes taken by Floors Trust and Harlan's liability for self-employment tax. As discussed below, since petitioners offered no credible evidence with respect to these issues, the burden of proof remains with them to show error in respondent's determinations, and they have not satisfied the burden.

III. Is Floors Trust Disregarded for Federal Income Tax Purposes?

Respondent contends that Floors Trust lacks economic substance and should therefore be disregarded for Federal income tax purposes. Petitioners assert that Floors Trust should be recognized as a valid entity for Federal income tax purposes. For the reasons discussed below, we agree with respondent. Accordingly, the income received by Floors Trust is taxable to Harlan.

It is well established that taxpayers have a right to minimize their taxes by structuring their transactions in any legally permissible manner. Gregory v. Helvering, 293 U.S. 465, 469 (1935). However, transactions that lack any significant economic purpose other than to avoid taxes will not be recognized for Federal income tax purposes, see Zmuda v. Commissioner, 79 T.C. 714, 720 (1982), affd. 731 F.2d 1417 (9th Cir. 1984), and we will look beyond the form of such transactions and apply the tax law in accordance with the substance of these transactions, see Markosian v. Commissioner, 73 T.C. 1235 (1980); Furman v. Commissioner, 45 T.C. 360 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967).

We have considered the following factors in deciding whether a purported trust lacks economic substance and should, therefore, be disregarded as an invalid entity for Federal income tax purposes: (1) Whether the relationship of the grantor to the

property purportedly transferred into trust differed in any material respect before and after the formation of the trust; (2) whether the trust had at least one bona fide independent trustee; (3) whether an economic interest in the trust passed to any of the designated trust beneficiaries other than to the grantor; and (4) whether the taxpayer felt bound by any of the restrictions imposed by the trust at issue or the law of trusts.  See Markosian v. Commissioner, supra at 1243-1245.

A.  Grantor's Relationship to Trust Property Before and After Trust Formation

The first factor to be considered in determining whether a trust lacks economic substance is whether the grantor's relationship to the property transferred to the trust at issue differed in any material respect before and after the formation of the trust.  Id. at 1243.

Before the formation of Floors Trust, Harlan operated Edwards Vinyl as a sole proprietorship.  After the formation of Floors Trust, he continued to make the day-to-day managerial decisions for the business.  Additionally, the business assets were located at Harlan's personal residence, where he had unrestricted access to them, both before and after the transfer to the trust.

Harlan and Jody were the persons authorized to sign checks drawn on Floors Trust's business checking account.  Further, Harlan conceded in his testimony that no trustee imposed any

requirements or made any demands with respect to the manner in which the flooring business was operated.

On the basis of the record, we find that Harlan's relationship to the property transferred to Floors Trust did not differ in any material respect after the transfer.  See Gouveia v. Commissioner, T.C. Memo. 2004-256; Norton v. Commissioner, T.C. Memo. 2002-137.

B.  Independent Trustee

At its creation, the trustees of Floors Trust were Jody and Roland.  On May 1, 1996, Roland purported to resign and appoint Becky as his replacement.  Petitioners admit that the requirements of the trust instrument were not observed in this purported resignation and replacement.[7]  Roland's resignation was not witnessed, and there is no contemporaneous written evidence that Jody approved the appointment of Becky as successor trustee, as required in the trust instrument.  Thus, petitioners were at best somewhat lax with respect to the trust's formal requirements concerning trustees, and the competent evidence in this case fails to establish unequivocally that Becky was a trustee.  If Roland's purported resignation and replacement by Becky in 1996 were ineffective, then the only duly appointed trustees in 1998

_____

[7] Petitioners attached to their brief a "memo" in which Jody admits that Roland's 1996 resignation was not witnessed or recorded in the trust minutes as required by the trust instrument.  Further, Jody admits that he failed to sign the purported appointment of Becky in 1996.

were Roland, a trustee who was under the impression that he had resigned, and Jody.

Even if it were accepted that a valid replacement of Roland by Becky was effected in 1996, so that Becky served as a trustee in addition to Jody in 1998, Harlan's own testimony makes it clear that no trustee imposed any meaningful oversight or control over Floors Trust in 1998. He conceded that no trustee made any demands or imposed any requirements with respect to his operation of the flooring business. Further, Harlan (as well as Jody) had signatory authority over the trust's checking account.

Neither Becky[8] nor Roland testified at trial concerning any meaningful oversight they may have performed as trustees of Floors Trust, and we conclude, on the basis of their failure to do so, that their testimony would have been unfavorable to petitioners. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); Gouveia v. Commissioner, supra.

In sum, given petitioners' failure to observe formalities with respect to the resignation and appointment of trustees, and Harlan's unfettered control of the trust's assets and operations, we conclude that Floors Trust did not have an independent trustee who exercised meaningful control over its operations. See Buckmaster v. Commissioner, T.C. Memo. 1997-236; see also Zmuda

---

[8] See the section entitled Evidentiary Note, supra p. 7.

v. Commissioner, supra at 720; Para Techs. Trust v. Commissioner, T.C. Memo. 1994-366 (and cases cited therein), affd. without published opinion sub nom. Anderson v. Commissioner, 106 F.3d 406 (9th Cir. 1997).

C. Transfer of Economic Interest to Beneficiaries Other Than Grantor

The third factor we consider is whether a genuine economic interest in Floors Trust passed to anyone other than Harlan. Markosian v. Commissioner, 73 T.C. at 1243.

According to the trust instrument of Floors Trust, Jody held 94 of 100 units of beneficial interest, Harwood Holding and Harwood Group each held 2 units, and Harlan held the remaining 2 units. Notwithstanding this formal allocation of the beneficial interests, Floors Trust's Schedule K-1 for 1998 reports that Jody received no distributions while Harlan and Harwood Group received distributions of $3,979 and $5,000, respectively.

Petitioners argue that the distribution to Harwood Group evidences that a genuine economic interest passed to beneficiaries other than Harlan because Harwood Group's beneficiaries consisted not only of Harlan but also of Jody and Greg. However, given that Harwood Group's principal assets were Harlan's residence and assorted household furnishings, we are persuaded that Harwood Group was a mere intermediary for passing economic benefit to Harlan. Cf. Norton v. Commissioner, supra

(distributions to a trust holding taxpayer's residence benefited taxpayer, not economic interests of others).

On these facts, given the incidence of distributions that bore no discernible relationship to the formal allocation of beneficial interests, and the fact that these distributions all tended to benefit Harlan, we conclude that no genuine economic interest in Floors Trust passed to anyone other than Harlan.  See Markosian v. Commissioner, supra at 1244.

D. Trust Restrictions Binding Taxpayer

The final factor we consider is whether Harlan felt bound by any restrictions imposed by Floors Trust or by the law of trusts. See id.

In his testimony, Harlan conceded that his flooring business was operated the same before and after its purported transfer to Floors Trust.  Indeed, notwithstanding the purported transfer of the business, Harlan referred to Jody as "my" employee.  Harlan likewise testified that no trustee imposed any requirements or made any demands with respect to the manner in which the business was operated.  Harlan had unrestricted access to the business assets (as they were located at his residence) and to the business checking account.  Harlan's unrestricted use of the trust's assets as well as his unrestricted management of the installation business demonstrate that Harlan was not, in fact, restricted in any meaningful manner.  See id.; Gouveia v.

<u>Commissioner</u>, <u>supra</u>; <u>Norton v. Commissioner</u>, <u>supra</u>.  Accordingly, on this record, we find that Harlan was not in practice bound by any restrictions imposed by Floors Trust or the law of trusts.

E. <u>Conclusion</u>

Petitioners claim on brief that Floors Trust was created to benefit the designated beneficiaries and to ensure that Jody would be the only child who would benefit directly from the flooring business.  However, the available evidence of distributions shows that Harlan, not Jody, was the beneficiary of the trust's distributions, undermining their claim regarding the purpose of forming the trust.  Cf. <u>Gouveia v. Commissioner</u>, T.C. Memo. 2004-256 (claim that trust was created as protection from business liabilities not supported by evidence).

After considering the four factors articulated in <u>Markosian v. Commissioner</u>, <u>supra</u> at 1243-1244, all of which favor respondent, we find, on the basis of a preponderance of the evidence, that Floors Trust lacked economic substance and should be disregarded for Federal income tax purposes.  We therefore hold for respondent on this issue.[9]  Accordingly, the net income of Floors Trust is properly taxable to Harlan.

---

[9] In light of our holding, we need not address respondent's alternative contentions that Floors Trust's income is taxable to Harlan under the grantor trust rules or the assignment of income doctrine.  Additionally, since we have held that Floors Trust is a nullity for Federal income tax purposes, we do not sustain respondent's determination that Floors Trust is liable for an accuracy-related penalty pursuant to sec. 6662.

IV. Unreported Income

Respondent determined that Floors Trust had unreported income of $6,908 in 1998, computed as the amount by which the trust's $93,831 in cash deposits for the year (determined through a bank deposits analysis) plus bartering income of $16,734 exceeded reported gross receipts of $103,657. In the notice of deficiency issued to Harlan, corresponding amounts were determined to be taxable income to him as a result of the disregard of Floors Trust for Federal income tax purposes.[10]

With respect to the $16,734 in bartering income determined by respondent, petitioners stipulated documents indicating, and Harlan admitted in his trial testimony, that he or Floors Trust was a member of bartering clubs and that the figure determined by respondent to be income from bartering represented the value of services Harlan received from bartering. Gross income includes compensation for services. Sec. 61(a)(1). When services are paid for in property or in exchange for other services, the fair market value of such property or other services must be included in income as compensation. Sec. 1.61-2(d)(1), Income Tax Regs.; see also Whitehead v. Commissioner, T.C. Memo. 2001-317; Badell v. Commissioner, T.C. Memo. 2000-303. We accordingly find that Harlan received bartering income of $16,734 in 1998.

_____

[10] Respondent has conceded that $83,024 of the $89,024 of expenses claimed on Floors Trust's 1998 Form 1041 are allowable expenses for the flooring business conducted by Harlan.

With respect to the cash gross receipts from the flooring business purportedly conducted by Floors Trust, respondent computed cash gross receipts for 1998 as equal to the sum of all deposits ($93,831) into the checking account maintained by Harlan and Jody in the name of Floors Trust. Petitioners have stipulated that the gross receipts from Floors Trust's business were deposited into that account, and Harlan further testified that the deposits represented income from the business activities of Floors Trust. While petitioners claim, for the first time on brief, that they had business records substantiating gross receipts (such that respondent need not have resorted to a bank deposits analysis), no such records were offered as evidence at trial. Petitioners also claim, for the first time on brief, that $3,000 of the deposits represented loans from Jody to the business. No evidence was offered at trial to support this claim, even though Jody was present and sworn as a witness (in addition to Harlan). Unsupported statements in a brief and exhibits that have not been admitted into evidence do not constitute competent evidence. Rule 143(b); <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202 (1999); <u>Viehweg v. Commissioner</u>, 90 T.C. 1248 (1988); <u>Castro v. Commissioner</u>, T.C. Memo 2001-115. Petitioners do not further contest respondent's reconstruction.[11]

---

[11] On brief, petitioners allege that the total deposits for 1998 were $87,845.97, as compared to respondent's figure of

(continued...)

In the absence of taxpayer records sufficient to establish the amount of income, the Commissioner may reconstruct income under any reasonable method.  Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965).  A bank deposits analysis is an acceptable method of reconstruction.  Harper v. Commissioner, 54 T.C. 1121 (1970).  On this record, on the basis of a preponderance of the evidence, we conclude respondent's treatment of the deposits into the Floors Trust checking account as equal to the cash gross receipts of the trust's business activities is accurate and accordingly find that Floors Trust had cash gross receipts of $93,831 in 1998.

As the cash gross receipts ($93,831) and bartering income ($16,734) together exceed Floors Trusts's reported gross receipts of $103,657 by $6,908, we sustain respondent's determination that

_____

[11](...continued)
$93,831 (rounded from $93,831.15).  However, this $5,985.18 discrepancy is readily explained.  First, petitioners excluded a $1,000 deposit made on July 7, 1998, on the basis of their claim (rejected above) that this amount was a loan to the business from Jody.  Second, with respect to the bank statement covering Dec. 5, 1997, through Jan. 7, 1998, petitioners erroneously took the sum of the running balances posted in 1998 ($3,613.82) rather that the deposits posted in 1998 ($1,174), which had the effect of overstating deposits in that period by $2,439.82.  Finally, petitioners erroneously omitted the deposits posted in the statement covering Feb. 6 through Mar. 5, 1998, resulting in an understatement of deposits of $7,425.  When petitioners' erroneous understatements and overstatements of deposits are netted, the result is an understatement of deposits of $4,985.18 which, when added to the $1,000 deposit excluded as a loan, equals the $5,985.18 discrepancy in the parties' respective claims regarding the amount of deposits in 1998.

Floors Trust had unreported income in that amount,[12] which is reportable by Harlan because Floors Trust is disregarded.

## V. Floors Trust Deductions

### A. Rent

Respondent determined that a $6,000 rent expense deduction claimed on the Floors Trust return should be disallowed for failure to substantiate or to show that such expenses were ordinary or necessary business expenses.[13]  On brief, respondent contends only that the rent expenditures were not ordinary and necessary expenses of the floor installation business, within the meaning of section 162, because rent had not been paid before the

_____

[12] We are mindful that the Court of Appeals for the Ninth Circuit, to which an appeal in this case would ordinarily lie, has held that, where unreported income has been determined, the presumption of correctness attaches to a notice of deficiency only where the Commissioner has established "some evidentiary foundation" linking the taxpayer to an income-producing activity or the receipt of unreported income.  See Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985); Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982).  In this case, given that Harlan conceded (i) that he received services from bartering equal in value to the amounts determined by respondent and (ii) that amounts paid for the floor installation services rendered by Harlan were deposited into the bank account that respondent analyzed, there is an ample evidentiary foundation for respondent's determination of unreported income.

[13] Because we have concluded that Floors Trust is a sham that is disregarded for Federal income tax purposes, it is Harlan, as sole proprietor of the floor installation business reported to the Schedule C filed by Floors Trust, who may be entitled to any deduction for rent (or other trade or business expenses) claimed by Floors Trust.  We note in this regard that respondent has conceded Harlan's entitlement to deductions for numerous expenses of the floor installation business initially claimed by Floors Trust on its 1998 return.  See supra note 10.

purported transfer of the business to a trust.  As respondent summarizes his argument: "There is no reason why the payment of rent suddenly became necessary upon the purported transfer of the business to a trust, when nothing else changed, and payment of rent was not previously necessary."

Respondent's argument focuses on the transfer of the floor installation business to Floors Trust and overlooks the transfer of Harlan's residence to Harwood Group.  Respondent's brief does not address the latter transfer at all.

Nonetheless, even if one assumes that Harwood Group is a valid trust to which a valid transfer of Harlan's residence was made, petitioners have not shown entitlement to the claimed deductions for rent.

We note first that petitioners have not shown that the burden of proof with respect to this issue has shifted to respondent pursuant to section 7491(a).  As discussed more fully below, the deductibility of rent for the use of property that has been transferred to a trust and then leased back by the trust's grantor depends, inter alia, upon the reasonableness of the rent and the independence of the trustee in negotiating it.  The evidence offered by petitioners with respect to the foregoing factors consisted of Harlan's testimony, wherein he stated that the monthly rent paid to Harwood Group (for the office and garage space at Harlan's residence) was initially set at $800 but

reduced to $500 when "I found that Harwood Group did not need that kind of an income". This evidence, while credible, is an insufficient basis for a decision on this issue in petitioners' favor. Indeed, it tends to show the opposite; namely, that the rent was set arbitrarily and that decisions thereon were made by Harlan rather than an independent trustee. Accordingly, the burden of proof has not shifted to respondent with respect to the disallowed rent deductions.

As noted, where property has been transferred to a trust and then leased back by the trust's grantor, the rent is deductible under section 162(a) upon a showing that, inter alia, the rent is reasonable in amount and the trustee has acted independently. See May v. Commissioner, 76 T.C. 7 (1981), affd. 723 F.2d 1434 (9th Cir. 1984). The Court of Appeals for the Ninth Circuit, to which an appeal in this case would normally lie, has placed particular emphasis on the independence of the trustee. See Brooke v. United States, 468 F.2d 1155, 1157 (9th Cir. 1972) ("Many decisions pivot on the issue of the independence of the trustee."). Whether the trustee has acted independently is a question of fact, involving the consideration of such criteria as the trustee's securing appraisals, requiring timely payment, exercising prudent business judgment, and evidencing awareness of his or her fiduciary obligations. Lerner v. Commissioner, 71 T.C. 290 (1978).

Petitioners have offered no competent evidence regarding the independence of the Harwood Group trustee or the foregoing criteria bearing thereon.  As noted, Harlan's testimony tends to show that the monthly rent was based on Harlan's perception of Harwood Group's "need" for income rather than the fair rental value of the leased property and, further, that it was Harlan rather than an independent trustee who made the determinations regarding the amount of rent.  On this record, we sustain respondent's determination to disallow the $6,000 deduction claimed for rent expense.

B.  Taxes

Respondent also determined that a $102 deduction claimed by Floors Trust for taxes should be disallowed for failure to substantiate or to show business purpose.  Petitioners have offered no credible evidence with respect to this issue, Harlan having testified only that he had "no clue" regarding what the deduction was for.  Accordingly, the burden of proof remains with petitioners, see sec. 7491(a), and they have offered no competent evidence to meet that burden.[14]  We therefore sustain respondent's determination.

---

[14] Petitioners argue for the first time on brief that the deduction was for State income tax paid in 1997.  As previously noted, unsupported statements in a brief do not constitute competent evidence.  Rule 143(b); Niedringhaus v. Commissioner, 99 T.C. 202 (1992); Viehweg v. Commissioner, 90 T.C. 1248 (1988); Castro v. Commissioner, T.C. Memo. 2001-115.

C.  Income Distribution

Respondent determined that $8,789 deducted by Floors Trust as an income distribution was disallowed for failure to meet the requirements of section 651 or 661.  Because we have held that Floors Trust is disregarded for Federal income tax purposes, no deductions for distributions of income are allowed.  We accordingly sustain respondent's determination increasing trust income (reportable by Harlan) in the foregoing amount.

VI.  Self-Employment Tax

Respondent determined that the net income from the flooring business constituted Harlan's net income from self-employment, taxable pursuant to section 1401.  Petitioners offered no evidence with respect to this issue.  There is accordingly no shift in the burden of proof to respondent under section 7491(a).

Section 1401 imposes a tax on self-employment income, defined generally as "the net earnings from self-employment derived by an individual".  Sec. 1402(b).  The net earnings from self-employment are, in turn, defined generally as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business".  Sec. 1402(a).

In light of the parties' stipulation that Harlan performed the floor installation activities for Floors Trust and that the

payment for services rendered by Harlan was provided to Floors Trust, and our conclusion that Floors Trust was a sham trust, we sustain the determination.  See Castro v. Commissioner, T.C. Memo. 2001-115.

## VII. Additions to Tax Under Sections 6651(a) and 6654

Pursuant to section 7491(c), respondent bears the burden of production with respect to the liability for any addition to tax and must, therefore, present sufficient evidence showing that such additions are appropriate.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once respondent has met his burden of production, petitioners must come forward with evidence sufficient to persuade the Court that respondent's determination is incorrect.  Id. at 447.  Petitioners also bear the burden of proof with regard to issues of reasonable cause, substantial authority, or similar provisions.  Id. at 446.

Respondent determined that Harlan is liable for an addition to tax pursuant to section 6651(a)(1) for 1998.  Section 6651(a)(1) imposes an addition to tax for failure to file a return (required under the Internal Revenue Code) on the date prescribed (determined with regard to any extension of time for filing), unless the taxpayer can establish that such failure is due to reasonable cause and not due to willful neglect.  Sec. 6651(a); Norton v. Commissioner, T.C. Memo. 2002-137.  The parties have stipulated that Harlan did not file a Federal income

tax return for 1998 and, as previously outlined, respondent has shown that Harlan had income in excess of the filing threshold in 1998. See secs. 6012, 6072. Thus, respondent has sustained his burden of production.

Hence, Harlan bears the burden of proving that the failure to file was due to reasonable cause and not willful neglect. See Higbee v. Commissioner, supra. Petitioners appear to argue, for the first time on brief, that Harlan did not file a return for 1998 because he did not believe he had sufficient taxable income to require it, given his belief that the income from the flooring business was attributable to Floors Trust. Petitioners do not argue, and there is no evidence to indicate, that Harlan sought professional advice regarding his decision not to file. Harlan's belief that he was not required to file a tax return does not constitute reasonable cause for a failure to file a return in the absence of timely advice from competent tax counsel. See Stevens Bros. Found., Inc. v. Commissioner, 39 T.C. 93, 133 (1962), affd. on this point 324 F.2d 633, 646 (8th Cir. 1963); Rollins v. Commissioner, T.C. Memo. 2004-260. We find that Harlan has not met his burden of proving that his failure to file was due to reasonable cause and not willful neglect. Accordingly, respondent's determination that Harlan is liable for the addition for failure to timely file his 1998 return pursuant to section 6651(a) is sustained.

Respondent also determined that Harlan was liable for an addition to tax pursuant to section 6654 for failure to pay estimated tax.  Section 6654 provides for an addition to tax in the event of an underpayment of a required installment of individual estimated tax.  See sec. 6654(a).  In general, each required installment of estimated tax is equal to 25 percent of the "required annual payment", which in turn is equal to the lesser of (i) 90 percent of the tax shown on the individual's return for that year (or, if no return is filed, 90 percent of his or her tax for such year), or (ii) if the individual filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return.  Sec. 6654(d)(1)(A) and (B).  The section 6654 addition to tax applies to an underpayment of a required installment unless the taxpayer comes within one of the exceptions provided in subsection (e) thereof.  See Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).

The parties have stipulated that Harlan did not file a Federal income tax return for 1997 or 1998, and respondent has shown that Harlan had sufficient income to incur Federal income tax for 1998.  See sec. 6654(d)(1)(B).  In their brief, petitioners respond to respondent's argument that Harlan is liable for a section 6654 addition to tax by claiming that Harlan "had no taxable income".  We treat this response as a tacit admission that Harlan did not pay any estimated tax in 1998.  As

a consequence, we are satisfied that respondent has met his burden of production with respect to this issue.  As petitioners do not argue, nor do we find, that Harlan qualifies for an exception listed in section 6654(e), respondent's determination is sustained.

VIII. <u>Conclusion</u>

We have considered all remaining arguments made by the parties for contrary holdings and, to the extent not addressed, find them to be irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.