T.C. Memo. 2003-212

UNITED STATES TAX COURT

DIANE S. BLODGETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5480-00.                    Filed July 16, 2003.

Diane S. Blodgett, pro se.

<u>Melissa J. Hedtke</u>, for respondent.

MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>: Respondent determined a
deficiency of $7,704 in petitioner's Federal income tax for the
year 1998.

The issues for decision are:  (1) Whether petitioner is
entitled to all or part of a $38,046,524 loss deduction that was
claimed on her 1998 Federal income tax return as a net operating
loss carryover from 1992, and (2) in the alternative, whether

petitioner is entitled to the following deductions claimed at trial and framed by her as (a) $733,500 for the theft loss of a pension, (b) $225,000 as carryforward legal expenses, (c) a $142,482 investment loss on a condominium and lot in Florida, (d) a $42,500 investment loss on a Simbari painting, (e) a $561,375 carryforward business or investment loss on rare coins, and (f) a $125,403 carryforward business or investment loss on historical documents.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference.  At the time the petition was filed, petitioner's legal residence was Minnetonka, Minnesota.

Petitioner was previously married to Michael W. Blodgett (Mr. Blodgett).  She was no longer married to Mr. Blodgett at the time of trial, and the record is unclear as to the date of their divorce.  During the year at issue, petitioner was employed as a teacher by the Minneapolis public school system.  Her filing status in 1998 was head-of-household.

Mr. Blodgett has a doctoral degree in educational administration.  In the 1970s, he founded a business, T.G. Morgan, Inc. (the business), which bought and sold rare coins. The business began as a sole proprietorship but was incorporated, with a subchapter S election, in 1985.  During 1992, petitioner was a 27.5 percent owner of the business.  Mr. Blodgett also

owned 27.5 percent of the business. The children of petitioner and Mr. Blodgett, Michael J., Matthew, and Christina, each held 15 percent of the business. The record is silent as to petitioner's participation in the business.

The business had a defined benefit pension plan, the T.G. Morgan Defined Benefit Pension Plan (pension plan). However, the record is not complete with respect to the formation, administration, and records of the pension plan. Insofar as the record reveals, its activity was not reported to the Internal Revenue Service on Form 5500-EZ, Annual Return of One-Participant (Owners and Their Spouses) Retirement Plan. Petitioner introduced at trial an unfiled Form 5500-EZ relating to the pension plan.

Through the financial success of the business, petitioner and Mr. Blodgett were able to lead a lavish lifestyle. In 1989, Mr. Blodgett purchased an original Simbari oil painting for petitioner for $85,000. Petitioner admired the artist, and the painting was displayed in petitioner's home. In 1990, petitioner and Mr. Blodgett purchased a condominium and lot at Key Largo, Florida (Florida property). They bought furniture and had it shipped to the property. They never occupied the property, nor did they rent it out for any period of time. They visited the property once, as Mr. Blodgett stated, "to tour it".

It is a matter of public record that Mr. Blodgett operated the business as a ponzi scheme. Stoebner v. FTC, 1997 U.S. Dist. LEXIS 4639 (D. Minn. Apr. 7, 1997).[1] There were both civil and criminal consequences for this behavior. Mr. Blodgett was charged with and convicted of several counts of fraud, for which he served a prison sentence from 1993 to 1999. United States v. Blodgett, 1994 U.S. App. LEXIS 21564 (8th Cir. Aug. 15, 1994). Petitioner was not charged with criminal wrongdoing. In addition to the criminal case, the Federal Trade Commission (FTC) initiated a civil action (FTC case) against the business and Mr. Blodgett, alleging deceptive trade practices and seeking permanent injunctive relief and consumer redress. See 15 U.S.C. sec. 45(a)(2), 53(b) (1988). In the FTC case, Mr. Blodgett, the business, and the FTC reached a settlement that was memorialized in a Final Judgment and Order (consent order) entered by the U.S. District Court for the District of Minnesota in March 1992. FTC v. T.G. Morgan, Inc., 1992 U.S. Dist. LEXIS 3309 (D. Minn. Mar. 4, 1992). Petitioner signed the consent order as a nonparty spouse.

---

[1] The U.S. Court of Appeals for the Eighth Circuit described Mr. Blodgett's activity as follows: "Blodgett * * * was in the habit of selling single coins to multiple customers, greatly overstating the value of such coins, and using coins he had already sold as collateral to obtain loans for his personal use." Hartje v. FTC, 106 F.3d 1406, 1407 (8th Cir. 1997).

The consent order provided for the creation of a "settlement estate" and a "litigation estate," to consist of assets transferred from the business, Mr. Blodgett, and petitioner. Id. A receiver was appointed to liquidate the assets in the two estates and disburse the money. The litigation estate was used to pay litigation expenses for the defense of actual or reasonably anticipated governmental enforcement actions against Mr. Blodgett or petitioner. The settlement estate was used to pay claims of defrauded customers of the business. The litigation estate was established with $300,000, funded solely through the liquidation of a so-called Coin Fund. The remaining proceeds from the liquidation of the Coin Fund were transferred to the settlement estate. The settlement estate also included the Florida property and the Simbari painting, among other assets.

After the onset of the FTC case but prior to the consent order, creditors of the business filed a chapter 7 involuntary bankruptcy petition against the business pursuant to 11 U.S.C. section 303. Although the business converted the case to a chapter 11 proceeding, the bankruptcy court reconverted the case to a chapter 7 proceeding and appointed John Stoebner the trustee on May 28, 1992. See Stoebner v. Vaughan, 179 Bankr. 600, 601 (D. Minn. 1995). On August 21, 1992, an order was issued by the U.S. District Court for the District of Minnesota to the receiver

in the FTC case to turn over all assets held in the settlement estate to the bankruptcy trustee (turnover order).[2]  FTC v. T.G. Morgan, Inc., supra.  The turnover order specified that those assets determined in the bankruptcy proceeding "to be property of the Federal Trade Commission, defendant Michael W. Blodgett, his spouse Diane Blodgett, or any entity that is owned or controlled by Michael W. Blodgett or Diane Blodgett, such asset or proceeds thereof shall be returned by the trustee to the T.G. Morgan Settlement Estate".  The turnover order further provided:  "all assets determined to be property of the estate of defendant T.G. Morgan, Inc. shall be retained by the trustee."  After the turnover order, the Florida property and Simbari painting became a part of the bankruptcy estate and were not returned to the settlement estate.

As part of the bankruptcy proceedings, the bankruptcy trustee prepared and filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for the business for the years 1990 through 1998.  Petitioner did not participate in the preparation of these returns.  On the 1992 return, filed by the trustee in February 1999, the business reported an ordinary loss in the amount of $17,202.  The trustee prepared and issued to the shareholders Schedules K-1, Shareholder's Share of Income, Credits,

---

[2]  At the time of the turnover order, the litigation estate fund had been exhausted.

Deductions, Etc., for the five shareholders, including petitioner. Line 23 of petitioner's Schedule K-1, Supplemental Information Required To Be Reported Separately to Each Shareholder, stated: "The overall S corporation loss reported on this K-1 is deductible only to the extent you have basis in your S corporation stock. To the best of the bankruptcy trustee's knowledge your basis is $-0-."

On her 1998 Federal income tax return, which was prepared by Mr. Blodgett from prison, petitioner reported wage income of $45,788.24 and income tax withheld of $5,582.56. The return also included a $38,046,524 loss deduction on line 12, Business Income or (Loss). This amount represented the amount listed on the proof of claim filed by the Federal Trade Commission in the bankruptcy case against T.G. Morgan, Inc. The return claimed a refund of all of petitioner's withholdings for 1998. A letter attached to her return entitled "Explanation for Large Loss Carry Forwards from 1992...for Diane S. Blodgett" stated:

> In 1991, I was a "non-party" spouse signatory and supposedly a beneficiary of a series of at least three "consent settlement" contracts with the Federal Trade Commission, and thus and under Minnesota marital property and contract and RICO laws, promised property or property or Constitutional rights which by breach of contract, extortion, alienation, or other RICO or federal or state civil or criminal misconduct were taken from me.

> Documents suppressed by the parties at that time, later became available showing wrongdoing and a high level conspiracy involving very powerful people and lawyers.

A lawsuit is currently pending in federal court, Case 98-49, and it has much key evidence proving my losses. In any case my entire ERISA Pension was alienated involving more than $1,000,000 in losses to me personally, plus the loss of all equity in my Minnesota homestead of more than $300,000. The ERISA and homestead losses alone more than cover any taxes which would otherwise be due but were paid already . . . please send me the refund requested.

Sincerely,
[signature]
Diane S. Blodgett

P.S. The State of Minnesota was a party to the contracts . . . but has never honored them either . . .
My rent is paid out of my earnings from teaching school.

Petitioner claimed deductions on her 1994, 1995, 1996, and 1997 returns that were similar in amount and nature to the loss deduction claimed on the 1998 return.[3] She claimed and received refunds of her annual withholdings of $736.36 in 1996 and $2,722.78 in 1997. The 1996 and 1997 returns also attached explanatory letters. In the letter attached to the 1996 return, petitioner alleged that the FTC stole the pension plan funds worth $815,000 and claimed that the assets turned over to settle

---

[3] On her 1994 return, petitioner reported a $3 million capital loss and other losses of $5 million. She explained the losses on her 1994 return as "loss carry forward, no taxes owed." On her 1995 amended return, petitioner reported $3 million as a business loss carryforward, $5 million as a capital loss carryforward, and $3 million as other losses. She reported her adjusted gross income as an $8 million loss carryforward. On her 1996 return, petitioner claimed a $9 million capital loss carryforward and $38,046,524 as other losses. On her 1997 return, petitioner claimed a business loss carryforward of $41,046,524.

the FTC case "were still 'our' property when the FTC made hundreds of illegal sales in commercially unreasonable manner--while serving as fiduciary".[4]

The primary issue for decision is whether petitioner is entitled to all or part of the $38,046,524 loss deduction claimed on her 1998 return as the carryover of a 1992 business loss. At trial, petitioner stated that she was no longer claiming the entire amount of that deduction; yet, she reiterated that she was entitled to deduct losses carried forward from T.G. Morgan, Inc. In the alternative, petitioner claimed the following items as deductible losses: (1) $733,500 for the theft loss of a pension fund; (2) $225,000 as carryforward legal expenses; (3) a $142,482 investment loss on a condominium and lot in Florida; (4) a $42,500 investment loss on a Simbari painting; (5) a $561,375 carryforward business or investment loss on rare coins;[5] and (6) a $125,403 carryforward business or investment loss on historical documents (collectively referred to as the enumerated items). These enumerated items, by the Court's own calculation, total

---

[4] The record does not explain the difference between the $815,000 value petitioner placed on the pension fund in the letter attached to her 1996 return and the $733,500 value she placed on it at trial.

[5] Petitioner characterized the losses on the coins as rare coins held personally, $302,500; rare coins mishandled out of Safrabank personal loan account in 1991, $155,650; and rare miscellaneous coins lost in 1994-97, $103,225.

$1,830,260.[6]  Petitioner did not provide a more precise accounting of the remaining losses.

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deductions claimed.  Rule 142(a);[7] INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  The taxpayer is required to identify each deduction available and show that all requirements have been met.  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Petitioner concedes that she bears the burden of proof.

A shareholder of an S corporation can deduct a proportionate share of the corporation's net operating loss to the extent the loss does not exceed the sum of the adjusted basis of the shareholder's stock in the corporation and any indebtedness of the S corporation to the shareholder.  Sec. 1366(d)(1).  Here, under section 1366, petitioner is not entitled to deduct in 1998 a business carryover loss from 1992.  She failed to present any evidence to establish her basis in the stock of the S corporation, T.G. Morgan, Inc.  Further, there is no evidence that the business was indebted to her.  Without basis in her

---

[6]    On briefs, petitioner made separate references to the total as equaling $1,830,250 and $1,830,225; there is no explanation in the record for these discrepancies.

[7]    Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

stock or qualifying debt with respect to her ownership of T.G. Morgan, Inc., petitioner may not deduct any portion of a net operating loss of that corporation.

Even if petitioner could deduct a portion of the loss, the amount of her loss has not been established. T.G. Morgan, Inc. reported a loss in 1992 of $17,202. If that amount is correct, petitioner's share of that loss, 27.5 percent, would be $4,730.55. Sec. 1366(a)(1). Yet, petitioner presented neither evidence of the transactions giving rise to the claimed loss nor evidence of how much of that loss was absorbed in prior years. Bohannon v. Commissioner, T.C. Memo. 1997-153 (NOL carryforwards denied to taxpayer who failed to show that the losses had not been absorbed in prior years).

Petitioner claimed that the income tax returns filed by the bankruptcy trustee on behalf of T.G. Morgan, Inc., were false. However, no evidence was presented to establish that any action was instituted in the bankruptcy court to compel a correction of the income tax returns filed by the trustee. Moreover, as noted earlier, petitioner's claimed loss on her return is not based on the Schedule K-1, which was issued to her by the bankruptcy trustee (and which reflected a loss of $17,202 of the business), but instead is based on a proof of claim in the amount of $38,046,524 filed by the FTC as a creditor in the T.G. Morgan, Inc., bankruptcy proceeding. The record of this case does not

establish that petitioner was the sole beneficiary for whom the proof of claim was filed; what amounts were turned over to the FTC in satisfaction of this claim; or whether petitioner filed a proof of claim on her own behalf in the T.G. Morgan, Inc., bankruptcy proceeding. Petitioner has not met her burden of proving she is entitled to deduct a 1992 net operating loss of T.G. Morgan, Inc., as claimed in 1998.

Petitioner argued that, because she received refunds from respondent in prior years based on the reported net operating loss carryovers, the carryover deduction should not now be treated differently. The Court rejects this argument. Each taxable year stands alone, and the Commissioner may challenge in a succeeding year what was condoned or agreed to in a prior year. Rose v. Commissioner, 55 T.C. 28 (1970). Thus, a taxpayer must abide by the Internal Revenue Code even if an improper deduction is claimed and allowed by the Internal Revenue Service in a prior year. Accordingly, the refunds petitioner received in past years are inapposite to the decision in this case. Respondent is sustained on the issue of the net operating loss carryover deduction.

The Court next addresses petitioner's alternative claims, the deductibility of various other losses. At trial, petitioner claimed the theft loss of a pension plan of $733,500, based on allegations of fraud, theft, estoppel, and breach of fiduciary

duty by the bankruptcy trustee and Internal Revenue Service officials. In particular, she disputed the bankruptcy court's treatment of various assets as belonging to the business when those assets were not returned to the settlement estate. Again, no evidence was presented to show what, if any, actions were taken by her in the bankruptcy court to rectify these claims.

Section 165(a) allows as a deduction any loss sustained by a taxpayer during the taxable year that is not compensated for by insurance or otherwise. In order to sustain a theft loss deduction, a taxpayer has the burden of proving a loss discovered in the taxable year was incurred as a result of a casualty or theft and the amount of such loss. Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). The taxpayer must also prove ownership of the stolen property. Draper v. Commissioner, 15 T.C. 135, 135 (1950); Jensen v. Commissioner, T.C. Memo. 1979-379; Silverman v. Commissioner, T.C. Memo. 1975-255; Whiteman v. Commissioner, T.C. Memo. 1973-124.

For several reasons, petitioner is not entitled to a theft loss deduction. First, the record does not establish to the Court's satisfaction the existence of a pension plan or the amount of any contributions made to the plan. There can be no theft of an asset whose existence is not firmly established, with an ascertainable value, as belonging to the taxpayer. See sec. 1.165-8(d), Income Tax Regs. ("the term 'theft' shall be deemed

to include, but shall not necessarily be limited to, larceny, embezzlement, and robbery"); Whiteman v. Commissioner, supra, (taxpayer denied theft loss deduction as to jewelry and furs because he failed to establish both their value and ownership). Further, theft losses are treated as sustained during the taxable year in which the taxpayer discovers the loss. Sec. 165(e). Notwithstanding the fact that petitioner's claims of theft by Government officials in the bankruptcy case, the FTC case, and the IRS audit are meritless, petitioner "discovered" these events well before 1998, the year at issue. She is not entitled to a theft loss deduction in 1998. Respondent is sustained on this issue.

Next, petitioner claimed entitlement to a deduction of $225,000 as carryforward legal expenses. To the extent this deduction is related to the legal expenses of the business, such expenses would be reflected in the net income or loss of the business that would flow through to the individual shareholders. As noted earlier, petitioner had no basis in the S corporation entitling her to deduct losses from the business. Moreover, petitioner advanced no other convincing evidence or argument that would entitle her to deduct the legal expenses. She has failed to prove that her costs, if any, for defending herself and Mr. Blodgett from civil or criminal liability connected with the business were other than nondeductible personal expenses. Matula

v. Commissioner, 40 T.C. 914, 917-918 (1963) (costs and fees for defending suits and indictments for torts and crimes are personal expenses and not deductible). Respondent is sustained on this issue.

Petitioner claimed a $142,482 investment loss on the Florida property.[8] The Florida property became part of the settlement estate in the FTC case, which was used to pay claims of defrauded customers of the business, and was eventually transferred to the bankruptcy trustee.

Section 165 allows a deduction for losses incurred in connection with any transaction entered into for profit, though not connected with a trade or business. Sec. 165(c)(2). The burden of proof is on the taxpayer to demonstrate the necessary profit objective. Rule 142(a); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without opinion 647 F.2d 170 (9th Cir. 1981). A taxpayer enters a transaction with a profit objective if "the facts and circumstances * * * indicate that the taxpayer entered into the activity, or continued the activity, with the actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Surloff v. Commissioner, 81 T.C. 210,

---

[8] This amount is derived from a faulty calculation of petitioner's basis in the Florida property. However, it is unnecessary for the Court to determine the correct basis.

233 (1983). Greater weight is given to objective facts than to the parties' mere statements of intent. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979). In determining whether an activity was entered into for profit, the following factors are considered: (1) The manner in which the taxpayers carried on the activity; (2) the expertise of the taxpayers or their advisers; (3) the time and effort expended by the taxpayers in carrying on the activity; (4) an expectation that the assets used might appreciate in value; (5) the success of the taxpayer in carrying other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits earned; (8) the financial status of the taxpayer; and (9) the existence of elements of personal pleasure in carrying out the activity. Sec. 1.183-2(b), Income Tax Regs.

On this record, the Court concludes that the purchase of the condominium and lot was not engaged in for profit, either from business or investment. The Court reaches this conclusion based on petitioner and Mr. Blodgett's lack of expertise in the real estate business, their insufficient time and effort expended in carrying out any rental of the condominium, a lack of market analysis on the appreciation potential of the property, and the lack of credibility of the witnesses at trial. Although petitioner claimed she and Mr. Blodgett purchased the Florida

property to rent it out, they never carried through with an intention to do so. Moreover, this Court is not bound to accept a taxpayer's self-serving, unverified, and undocumented testimony. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioner has simply not shown to the Court's satisfaction that the purchase of the condominium was for profit from business or investment; thus, no deduction under section 165(c)(1) or (2) is allowed. The Court further holds that the property was purchased for personal, living, and family purposes. As a result, under section 262, its loss is not deductible. See Austin v. Commissioner, 298 F.2d 583 (2d Cir. 1962), affg. 35 T.C. 221 (1960). Respondent is sustained on this issue.

Petitioner also claimed a $42,500 investment loss on a Simbari painting.[9] The painting was transferred to the settlement estate in the FTC case and never returned to petitioner. The loss of the painting is not deductible by petitioner under section 165(c)(1) or (2) as a loss from a transaction entered into for profit. The painting was displayed in petitioner's home and was never used for a business or investment purpose. Despite Mr. Blodgett's claim to have bought the painting as an investment, no credible evidence was presented as to petitioner's

---

[9] The purchase price of the painting was $85,000. Because she jointly owned the painting with Mr. Blodgett, petitioner claimed one-half of its cost as her loss deduction.

or Mr. Blodgett's expertise in art, the obtaining of a market analysis on the painting, or a history of investments in art. Mr. Blodgett's expectation of 500 percent or more appreciation in the value of the painting can best be described as a speculative hope.  Moreover, the element of personal pleasure from owning the painting was evident from Mr. Blodgett's description of buying it for his wife.  The Court holds that personal pleasure was the primary reason for having the painting.  Its loss was a nondeductible personal, living, or family expense.  Sec. 262. Respondent is sustained on this issue.

Finally, petitioner claimed carryforward business or investment losses of $561,375 on rare coins and $125,403 on historical documents.  She characterized the losses on the coins as rare coins held personally, $302,500; rare coins mishandled out of Safrabank personal loan account in 1991, $155,650; and rare miscellaneous coins lost in 1994 to 1997, $103,225. Petitioner presented scant evidence regarding the historical documents.  Petitioner did not meet her burden of proof with respect to the ownership, the value, and the transfer of the coins and rare documents.  The Court disregards petitioner's

self-serving statements.  <u>Tokarski v. Commissioner</u>, <u>supra</u>.

Respondent is sustained on this issue.

<u>Decision will be entered</u>

<u>for respondent.</u>