T.C. Memo. 2005-218


UNITED STATES TAX COURT


MARK O. KAPLAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3624-04.                    Filed September 20, 2005.


<u>Albert L. Grasso</u>, for petitioner.

<u>Kathleen C. Schlenzig</u>, for respondent.


MEMORANDUM OPINION


THORNTON, <u>Judge</u>:  Respondent determined a $123,543
deficiency with respect to petitioner's 1994 income tax and a
$188,964 deficiency with respect to petitioner's 1997 income tax.
The deficiencies arise from respondent's denial of petitioner's
asserted basis in his wholly owned S corporation, Marc
Construction and Development Co. (Marc), which resulted in

disallowance of petitioner's passthrough Marc losses pursuant to section 1366(d).[1]  The issue for decision is the amount of petitioner's adjusted basis in Marc as of December 31, 1997.[2]

### Background

The parties submitted this case fully stipulated pursuant to Rule 122.  We incorporate herein the stipulated facts.  When petitioner filed his petition, he resided in Chicago, Illinois.

#### Petitioner and His S Corporations

Petitioner is a real estate developer.  During the relevant years, he conducted his operations through multiple entities, including several wholly owned S corporations.  In addition to Marc, these S corporations included:  Lakeview Development of Barrington, Inc. (Lakeview); Pleasant Prairie Development, Inc. (Pleasant Prairie); and Silver Glen Development, Inc. (Silver Glen).

For the year ending December 31, 1996, Marc sustained a loss of $792,752 (the Marc loss).  At that time, petitioner had zero adjusted basis in Marc.  Consequently, even though the Marc loss was allocable to petitioner, see sec. 1366(b), he was unable to deduct it in 1996, see sec. 1366(d).  The Marc loss carried over

---

[1] All section references are to the Internal Revenue Code in effect for the taxable years in issue.  All rule references are to the Tax Court Rules of Practice and Procedure, as amended.

[2] The deficiency for 1994 results from respondent's disallowance of a carryback from 1997.

to petitioner's 1997 tax year. See sec. 1366(d)(2). Petitioner took certain steps, as described below, to attempt to create adjusted basis in Marc to enable him to deduct the Marc loss in 1997.

Petitioner Borrows $800,000 From the Bank

On December 29, 1997, petitioner borrowed $800,000 from Manufacturers Bank (the Bank), evidenced by his promissory note (the note) of the same date. The note's maturity date was January 30, 1998. When he executed the note, petitioner prepaid $1,000 of finance charges to the Bank.

When he applied for the loan, petitioner did not provide the Bank any financial statement, and he had no preexisting relationship with the Bank. The note was collateralized by two Bank deposit accounts (the deposit accounts), one owned by Lakeview and the other owned by Pleasant Prairie. The deposit accounts were opened for the sole purpose of facilitating the loan between petitioner and the Bank. When petitioner executed the note, the deposit accounts had zero balances.

Petitioner Pays $800,000 to Marc

Contemporaneously with the Bank loan, petitioner issued Marc an $800,000 check drawn on his account at the Bank. Marc deposited the check in its account at the Bank.

Marc Pays $800,000 to Pleasant Prairie and Lakeview

Contemporaneously with the transactions described above, Marc paid the $800,000 loan proceeds to Pleasant Prairie and Lakeview. Specifically, on December 29, 1997, Marc issued Lakeview a $550,000 check, which Lakeview deposited in its account at the Bank. Also on December 29, 1997, Marc issued to Pleasant Prairie a $250,000 check, which Pleasant Prairie deposited in its account at the Bank. Prior to making this payment, Marc had an account payable balance due to Pleasant Prairie in the amount of $204,222.

Pleasant Prairie and Lakeview Pay Petitioner $800,000

On or before January 8, 1998, petitioner borrowed $550,000 from Lakeview and $250,000 from Pleasant Prairie.[3] Petitioner deposited the proceeds in his account at the Bank.

Petitioner Repays Bank $800,000

On January 8, 1998, petitioner paid off the note by issuing the Bank a check in the amount of $800,000, drawn on his account at the Bank.

---

[3] The parties stipulated that petitioner borrowed the $250,000 from Lakeview. On brief, however, the parties appear to agree, consistent with other facts disclosed by the record, that petitioner borrowed the $250,000 from Pleasant Prairie. Accordingly, we decline to be bound by the apparently inadvertent error in the stipulation. See Gulf Oil Corp. v. Commissioner, 87 T.C. 135, 159 n.4 (1986), affd. 914 F.2d 396 (3d Cir. 1990).

Items Reallocated From Silver Glen to Marc by Journal Entry

As of December 31, 1997, Marc's books and records showed "Loans to stockholders" of $1,305,226. This amount included, in addition to the $800,000 Bank loan proceeds that petitioner transferred to Marc on December 29, 1997 (and certain nongermane items), $213,571 that had been recorded by Silver Glen and that was made up of $159,116 of legal fees and a $49,000 loan from petitioner. By adjusting journal entry, these amounts had been "reallocated" from Silver Glen to Marc as loans from petitioner.

Merger of Marc, Lakeview, and Pleasant Prairie

On or about December 15, 1998, pursuant to section 368(a)(1)(A), Marc, Lakeview, and Pleasant Prairie merged into Marc Development Company, a C corporation wholly owned by petitioner.

Petitioner's 1997 Tax Return and NOL Carryback to 1994

On his 1997 Federal income tax return, petitioner reported current-year ordinary income from Marc of $183,894, which he offset against the $792,752 Marc loss that had been carried over from 1996 pursuant to section 1366(d)(2). Consequently, for 1997 petitioner reported a net loss from Marc of $608,858.

On Schedule D, Capital Gains and Losses, of his 1997 income tax return, petitioner reported a $49,000 long-term capital gain from "Recapture of Loan Basis" with respect to the Silver Glen loan that had been "reallocated" (as discussed above) by

adjusting journal entry from Silver Glen to Marc.  On the same Schedule D, this $49,000 long-term capital gain was more than offset by reported net long-term losses from partnerships, S corporations, and fiduciaries in the amount of $230,976.

For 1997, petitioner reported (after factoring in various other items not at issue here) a net operating loss (NOL) of $311,976.  Petitioner carried this NOL back to 1994 and filed a Form 1045, Application for Tentative Refund, claiming a $123,543 overpayment for 1994.  Pursuant to section 6411, respondent made a tentative allowance of the 1994 claimed overpayment.

Notice of Deficiency

By notice of deficiency, respondent disallowed petitioner's claim to the $792,752 Marc carryover loss, on the ground that it exceeded petitioner's basis in Marc stock and debt for 1997.  As a consequence, petitioner's 1997 income was increased by $792,752, wiping out petitioner's NOL carryback to 1994. Accordingly, respondent recaptured the $123,543 tentative allowance of petitioner's 1994 claimed overpayment and increased petitioner's 1994 tax by the same amount.

## Discussion

### I.  General Legal Principles

Generally, an S corporation shareholder determines his or her tax liability by taking into account a pro rata share of the S corporation's income, losses, deductions, and credits.  Sec.

1366(a)(1).  The shareholder may not take into account, however, S corporation losses and deductions for any taxable year in excess of the shareholder's adjusted basis in the S corporation stock and debt.  Sec. 1366(d)(1).[4]

In order to increase basis in an S corporation, the shareholder must make an actual economic outlay; to satisfy this requirement, even in circumstances where the taxpayer purports to have made a direct loan to the S corporation, the taxpayer must show that the claimed increase in basis was based on "'some transaction which when fully consummated left the taxpayer poorer in a material sense.'"  Bergman v. United States, 174 F.3d 928, 932 (8th Cir. 1999) (quoting Perry v. Commissioner, 54 T.C. 1293, 1296 (1970), affd. 27 AFTR 2d 71-1464, 71-2 USTC par. 9502 (8th Cir. 1971)); see Hitchins v. Commissioner, 103 T.C. 711, 715

---

[4] More exactly, with respect to taxation of a shareholder of an S corporation, sec. 1366(a)(1) provides:

> there shall be taken into account the shareholder's pro rata share of the corporation's
>
>> (A) items of income (including tax-exempt income), loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, and
>>
>> (B) nonseparately computed income or loss.

The aggregate amount of losses and deductions taken into account by such shareholder for a taxable year cannot exceed the sum of:  "(A) the adjusted basis of the shareholder's stock in the S corporation * * *, and (B) the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder".  Sec. 1366(d)(1).

(1994). This doctrine ensures that the transaction has some economic substance beyond the creation of a tax deduction. <u>Oren v. Commissioner</u>, 357 F.3d 854, 857 (8th Cir. 2004), affg. T.C. Memo. 2002-172.

## II. The Parties' Positions

On his 1997 tax return, petitioner claimed the $792,752 Marc loss (carried forward from 1996), on the premise that various events during 1997 created at least that much adjusted basis in his Marc stock and debt. Petitioner was unable to use this entire loss in 1997 and carried a portion of it back to 1994. In the notice of deficiency, respondent disallowed the $792,752 loss on the ground that as of December 31, 1997, petitioner had zero adjusted basis in the Marc stock and debt.[5]

In this proceeding, the parties have narrowed their differences. Respondent now concedes that as of December 31, 1997, petitioner had adjusted basis in Marc stock of $321,859, representing the income realized by Marc during 1997 and allocable to petitioner as Marc's sole shareholder.[6]

---

[5] Respondent's disallowance of petitioner's claim to the $792,752 Marc loss resulted in deficiencies for both 1997 and the 1994 carryback year. Apart from challenging the adequacy of petitioner's basis in Marc for 1997, respondent has not challenged the propriety of petitioner's carryback of the $792,752 of Marc losses from 1997 to 1994.

[6] The $321,859 is made up of $189,748 ordinary income from Marc's trade or business activities during 1997, Marc's $133,975 of 1997 investment income, and a $1,864 sec. 1231 loss realized

(continued...)

On brief, petitioner contends that he has established adjusted basis in Marc stock and debt of $645,535 as of December 31, 1997.[7] This amount is made up of the $321,859 of adjusted basis conceded by respondent, plus these three additional items that petitioner contends created basis in Marc: (1) $204,222 of the $800,000 proceeds from the 1997 Bank loan; (2) $49,000 attributable to petitioner's purported loan to Silver Glen that was "reallocated" to Marc in 1997; and (3) $70,454 of legal expenses that petitioner claims he paid on behalf of Marc during 1997. We consider these three items in turn. The burden of proof is on petitioner. Rule 142(a).[8]

---

[6](...continued)
by Marc during 1997.

[7] Petitioner thereby effectively concedes that he is not entitled to $147,217 of the $792,752 loss he claimed on his 1997 tax return.

[8] Effective for court proceedings arising in connection with examinations commencing after July 22, 1998, if certain requirements are met, sec. 7491(a) places the burden of proof on the Commissioner with respect to any factual issue relevant to ascertaining a taxpayer's liability for any tax imposed by subtitle A or B of the Code. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726. Petitioner has neither alleged that sec. 7491(a) applies nor established that the preconditions to its applicability have been met. Accordingly, sec. 7491(a) does not apply.

III.  Bank Loan Proceeds

At the end of 1997, petitioner borrowed $800,000 from the Bank.  Contemporaneously, petitioner purportedly lent Marc $800,000, by writing a check for $800,000 to Marc, which contemporaneously wrote checks totaling $800,000 to Lakeview and Pleasant Prairie, which shortly thereafter paid $800,000 to petitioner, who used the funds to pay off the Bank note, 11 days after its creation.  The issue is whether petitioner made any economic outlay to Marc so as to create basis therein.

In Oren v. Commissioner, T.C. Memo. 2002-172, affd. 357 F.3d 854 (8th Cir. 2004), the Courts considered a circular funds-juggling arrangement similar to that involved in the instant case.  In Oren, the taxpayer borrowed funds from an S corporation, Dart Transit Co. (Dart), which he controlled and owned a majority interest in.  The taxpayer then lent these funds to his two wholly owned S corporations; over time, these S corporations lent the funds back to Dart.  This Court held that the loan transactions had no net economic effect, noting that the loan proceeds originated and ended with Dart.  This Court stated: "The only significance of the transactions was the circular route of the various checks and the wire transfer and the execution of promissory notes.  The economic positions of the parties did not change."  Id.  Concluding that the circular loans involved no actual economic outlay, this Court disallowed the taxpayer's

claim for increased basis resulting from these transactions.  Id.
Affirming this Court's decision, the Court of Appeals for the
Eighth Circuit agreed that the taxpayer's loans to his S
corporations involved no actual economic outlays.  Oren v.
Commissioner, 357 F.3d at 858-859.

Similarly, petitioner's purported loan to Marc involved no
actual economic outlay.  In this case, as in Oren v.
Commissioner, T.C. Memo. 2002-172, the various disbursements
between the taxpayer and his S corporations were "the equivalent
of offsetting bookkeeping entries, even though they occurred in
the form of checks".  The loan proceeds originated and ended with
the Bank.  The Bank loan was "collateralized" with $800,000 that
Lakeview and Pleasant Prairie deposited in their Bank accounts
contemporaneously with the Bank loan.  In effect, then, the Bank
loan proceeds constituted the collateral for the Bank loan.  As
far as the record reveals, the loan proceeds never left the Bank
in the 11 days between the time the note was created and the time
it was paid off.[9]

---

[9] We are mindful that there was a note evidencing the
$800,000 loan from the Bank and that petitioner prepaid $1,000 in
interest charges to the Bank.  Even if we were to assume,
however, that there was a bona fide loan between the Bank and
petitioner, this circumstance would not answer the question of
whether petitioner made any actual economic outlay to Marc.
Indeed, petitioner has conceded that most of the $800,000
transaction was a "circular loan" that created no basis in Marc
for petitioner.  In making this concession, petitioner implicitly
acknowledges that the bona fides of the Bank loan are not
(continued...)

On brief, citing <u>Oren v. Commissioner</u>, 357 F.3d 854 (8th Cir. 2004), and <u>Bergman v. United States</u>, 174 F.3d 928 (8th Cir. 1999), petitioner states that he "agrees with all of those judicial decisions indicating that circular loans do not create basis." Petitioner concedes that the $550,000 that Marc disbursed to Lakeview reflects a circular loan and does not provide basis. With respect to the $250,000 that Marc disbursed to Pleasant Prairie, however, petitioner's position is more subtle. Petitioner notes that before Marc made this disbursement, it owed Pleasant Prairie $204,222. Consequently, petitioner argues, the $204,222 did not create a loan between Marc and Pleasant Prairie but rather extinguished a debt. Since there was no loan between Marc and Pleasant Prairie, petitioner concludes, there was no "circular loan", and hence the transaction increased petitioner's adjusted basis in Marc by $204,222.[10]

As best we understand it, petitioner's argument appears to be that because Marc could not recover $204,222 of the $250,000 that it purportedly lent to Pleasant Prairie, petitioner was exposed to the risk of not recovering $204,222 of his $800,000

---

[9](...continued)
controlling in deciding whether petitioner made any economic outlay to Marc.

[10] Petitioner concedes that the remaining $45,778 of the $250,000 transaction was a circular loan and provides no basis.

"loan" to Marc and thereby was exposed to the risk of repaying $204,222 of the Bank loan from his own pocket. Any such risk to petitioner was illusory. In the first instance, by virtue of Pleasant Prairie's and Lakeview's depositing (cumulatively) the entire $800,000 of the Bank loan proceeds into their Bank accounts contemporaneously with the Bank's making the loan, there was no significant risk that the Bank would enforce payment against petitioner in the event of a default. Moreover, inasmuch as petitioner wholly owned and controlled these S corporations and their bookkeeping, they obviously were not going to act adversely to his interests. In any event, as a result of the December 15, 1998, merger of Marc, Lakeview, and Pleasant Prairie into a new C corporation wholly owned by petitioner, all purported loan obligations between petitioner and his S corporations were extinguished; i.e., after the merger, petitioner purportedly would have owed the new corporation $800,000, which would have been exactly offset by the $800,000 that the new corporation purportedly would have owed petitioner. These circumstances further denote "the inherent lack of substance in the loans." Oren v. Commissioner, T.C. Memo. 2002-172.

In sum, we envision no realistic scenario in which petitioner's purported loan to Marc would have or could have made him poorer. We hold and conclude that petitioner made no

economic outlay with respect to any part of the $800,000 "loan" to Marc.[11]

## IV. Silver Glen Loan

Petitioner argues that he has additional basis in Marc by virtue of a $49,000 loan that he claims he previously made to Silver Glen.  On opening brief, petitioner contends that in 1997 Silver Glen repaid this loan to him, and that he then contributed the $49,000 to Marc, entitling him to basis of that amount in Marc.[12]  Respondent disputes whether petitioner ever made a $49,000 loan to Silver Glen, whether Silver Glen ever repaid such

---

[11] Petitioner has not raised, and we do not reach, any issue regarding the proper tax treatment of the $1,000 prepaid finance charge that petitioner paid the Bank upon making his promissory note.

On brief, respondent argues that petitioner was not at risk with respect to his purported $800,000 loan to Marc, and therefore petitioner's loss deductions from Marc are disallowed pursuant to sec. 465(a).  In light of our conclusion that the $800,000 purported loan gave petitioner no basis in Marc, it is unnecessary to reach the issue whether petitioner was at risk with respect to the purported loan.  We note, however, that "The at risk analysis is very similar to the actual economic outlay analysis".  Oren v. Commissioner, 357 F.3d 854, 859 (8th Cir. 2004), affg. T.C. Memo. 2002-172.

[12] On reply brief petitioner alters his story to say that in 1997 Silver Glen "distributed this [$49,000] loan to Petitioner" and "Petitioner contributed the * * * [Silver Glen] note to * * * [Marc]."  There is no such note in evidence.  But under this version of the facts, it is not apparent that the contribution to Marc of such a Silver Glen note would create any basis in Marc; by his own admission, petitioner had zero basis in the Silver Glen note.  In any event, petitioner's inconstancy with respect to the facts undermines his credibility.

a loan to petitioner, and whether petitioner ever contributed $49,000 to Marc.

The parties have stipulated that the books and records of Silver Glen and Marc indicate that a $49,000 loan from petitioner to Silver Glen was "reallocated" by adjusting journal entry from Silver Glen to Marc, which then included this amount in its "Loans to stockholders" account. Petitioner has not introduced any evidence, such as canceled checks or bank statements, to show that he actually disbursed $49,000 of his own funds to Silver Glen. As previously indicated, mere adjusting journal entries among petitioner's wholly owned S corporations are inadequate to establish that petitioner has made an actual economic outlay to Marc. Moreover, insofar as the record reveals, Marc's purported assumption of Silver Glen's purported debt was not accompanied by a novation releasing Silver Glen from liability to petitioner. Accordingly, if Marc failed to pay the purported debt, petitioner presumably would have had recourse against Silver Glen; the continued existence of petitioner's rights against Silver Glen negates creation of basis in Marc with respect to the purported debt. See Hitchins v. Commissioner, 103 T.C. at 717-719.

On his 1997 Federal income tax return, petitioner reported a $49,000 long-term capital gain from "Recapture of Loan Basis" with respect to the Silver Glen loan. At most, this tax reporting might tend to corroborate petitioner's claim that

Silver Glen repaid a $49,000 loan to him in which he had no adjusted basis.  This tax reporting does not establish, however, that petitioner made any economic outlay to Marc.

V.  Legal Expenses

Petitioner claims that during 1997 he paid from his personal assets more than $350,000 of Marc's expenses.  He claims that he has been able to locate substantiation for only $70,454 of these expenses; accordingly, he claims basis in Marc for this amount.[13]

Petitioner bears the burden of proving that he incurred the claimed expenses, that they were paid to protect or enhance the value of his investment in Marc, and that they were contributions to Marc's capital or loans to Marc.  Thomson v. Commissioner, T.C. Memo. 1983-279, affd. without published opinion 731 F.2d 889 (11th Cir. 1984).  Although the record contains evidence that legal bills aggregating $70,454 were paid during 1997, there is no evidence that the legal bills were paid by petitioner or on behalf of Marc.[14]  The parties have stipulated that the expenses in question were "recorded by" Silver Glen and "reallocated by adjusting journal entry" to Marc.  Petitioner has offered no

---

[13] Petitioner concedes that he lacks the requisite proof for the remainder of the alleged legal expenses and is therefore not entitled to basis with respect thereto.

[14] The invoices identify the matters involved only as "Kaplan v. Brown" and "Philip Wolin Litigation".  The record contains no explanation as to how such matters might relate to Marc.

explanation as to why the expenses should have been recorded by Silver Glen, if they were paid by petitioner personally on behalf of Marc. We conclude and hold that petitioner has failed to prove that he is entitled to any basis in Marc with respect to the alleged legal expense.

## VI. Conclusion

Petitioner has failed to establish that as of December 31, 1997, he had adjusted basis in Marc greater than the $321,859 that respondent has conceded. Accordingly, pursuant to section 1366(d), petitioner's 1997 loss deductions from Marc are limited to $321,859. To reflect respondent's concession,

<u>Decision will be entered under Rule 155</u>.