T.C. Memo. 2012-239

UNITED STATES TAX COURT

KERRY MARK KERSTETTER AND SHERRY LEE KERSTETTER, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10391-10. Filed August 21, 2012.

Kerry Mark Kerstetter and Sherry Lee Kerstetter, pro sese.

<u>Ann Louise Darnold</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies, additions to tax, and

penalties in relation to petitioners' Federal income tax as follows:

**[*2]**

| Year | Deficiency | Penalty Sec. 6662(a) | Addition to Tax Sec. 6651(a)(1) |
|------|-----------|----------------------|--------------------------------|
| 2001 | $25,541 | $5,108.20 | $6,385.25 |
| 2002 | 27,554 | 5,446.20 | --- |
| 2003 | 13,656 | 2,257.80 | 3,414.00 |
| 2004 | 8,903 | 1,316.80 | --- |

After concessions, the issues for decision are whether petitioners are entitled to business expense deductions or net operating loss carryovers beyond those conceded by respondent and whether petitioners are liable for the section 6651(a)(1) addition to tax for 2003 and for the section 6662(a) penalties. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Petitioners resided in Arkansas at the time they filed their petition. During the years in issue Kerry Mark Kerstetter (petitioner) conducted an accounting and tax preparation business operated out of petitioners' home. Sherry Lee Kerstetter assisted in petitioner's business and also conducted some real estate activity out of petitioners' home.

Petitioner and Ms. Kerstetter maintained separate offices in the home. Sixteen percent of the home, or 740 square feet, was used exclusively and

[*3] regularly for business purposes during the years in issue. The rest of the home was sometimes used for meeting with clients or with Internal Revenue Service (IRS) personnel auditing petitioner's clients' returns but was also used for personal purposes.

Petitioners filed a joint Federal income tax return for each of the years in issue. On Schedule C, Profit or Loss From Business, attached to each of those returns they claimed depreciation of $6,181, which was based on 100% of the cost basis of the home with no reduction for personal use. Also on Schedules C they claimed interest expense deductions of $94,380, $82,954, $27,229, and $22,578 for 2001, 2002, 2003, and 2004, respectively. Some of the interest should have been allocated to a farm activity reported on Schedule F, Profit or Loss From Farming, and some should have been allocated to personal mortgage interest and reported on Schedule A, Itemized Deductions. Other interest that they reported on their returns was personal and not deductible.

On their Schedules C for the years in issue petitioners deducted as supplies expenses amounts spent for pet food and pet supplies, but they now concede the disallowance of those deductions.

On each of the tax returns for the years in issue petitioners claimed a net operating loss carryover that eliminated any tax liability. The claimed net

**[*4]** operating losses allegedly were incurred beginning in 1995, and the amount claimed on the 2003 return, for example, was $454,694.

Petitioners' 2001 tax return was due, with extensions, October 15, 2002, but was not filed until May 31, 2003, the same date on which their 2002 return was filed. Their 2003 return was due, with extensions, October 15, 2004, but was not filed until July 9, 2005, two days before their 2004 return was filed. Petitioners did not have reasonable cause for late filing of their returns.

Examination of petitioners' returns commenced in 2006, and the notice of deficiency was sent on February 22, 2010. Disallowance of the net operating loss carryover was explained in the notice of deficiency as follows:

> Due to the disallowance of net operating loss carryovers from prior years, as set forth in the examination report for the taxable years ended December 31, 1997 and December 31, 1998, the net operating loss carryover to the taxable years ended December 31, 2001, December 31, 2002, December 31, 2003, and December 31, 2004 is $0.00. Accordingly, your taxable income for 2001, 2002, 2003, and 2004 are [sic] increased $470,362.00, $470,362.00, $454,694.00, and $413,236.00, respectively.

During the examination, the pretrial processes in this case, and at trial, petitioners claimed to have boxes of documents substantiating the net operating loss carryovers. At no time, however, did they present to respondent or to the

**[\*5]** Court evidence to substantiate any losses or carryovers applicable to the years in issue.

OPINION

Business Expense Deductions

Petitioners' arguments in this case have not been supported by evidence or by authority. Instead petitioners make assertions based only on their generalized testimony and on petitioner's claimed years of experience in dealing with the IRS on behalf of clients. Petitioners have the burden of proof with respect to deductions. See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). We are not required to accept testimony that is improbable or implausible. See Blodgett v. Commissioner, 394 F.3d 1030, 1035-1036 (8th Cir. 2005), aff'g T.C. Memo. 2003-212; Shea v. Commissioner, 112 T.C. 183, 189 (1999). Particularly in view of petitioner's experience, the absence of corroboration of his testimony by organized and reliable records leads us to conclude that petitioners have not carried their burden of proof as to the disputed deductions. See Shea v. Commissioner, 112 T.C. at 188. They have not satisfied the conditions for shifting that burden to respondent under section 7491(a).

After an extensive examination of petitioners' records of expenditures during the years in issue and negotiations before and concessions after trial, respondent

[*6] has agreed to deductions based on use of 16% of petitioners' home as their business offices. Petitioners, however, continue to claim that the percentage should be increased to reflect storage space, floor space under furniture and equipment located in combined use areas, and bathrooms connected to their offices.

Section 280A establishes the general rule that no deduction is allowed with respect to business use of a taxpayer's personal residence. Section 280A(c)(1)(A), however, provides that section 280A shall not apply if a portion of the taxpayer's personal residence is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer. See Sam Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1556-1557 (1987).

Petitioners' testimony fails to persuade us that they used more than 16% of the residence exclusively for business purposes. From their testimony it appears that personal records were also kept on computers and in the closet areas that they claim as business related. A table, a computer, or a copy machine located in a room that is used both for business and personal purposes may be occasionally used for business, but dual use of pieces of furniture or equipment does not satisfy the exclusive use test. Nor does occasional business use of a room, such as a bathroom which is also used for personal purposes, satisfy this test. See, e.g., Sam Goldberger, Inc. v. Commissioner, 88 T.C. at 1556-1557; Sengpiehl v.

[*7] Commissioner, T.C. Memo. 1998-23. We do not accept petitioners' claims that the items remaining in dispute were used exclusively for business or their allocation of fractional portions of rooms. Depreciation on the portion of the residence used exclusively for business purposes is thus limited to the 16% conceded by respondent.

Petitioners contend that interest paid on credit card debt reflects borrowing to pay business expenses. Their generalized assertions cannot be verified or traced in the documentary evidence. The IRS determined that 15% of the credit card charges were for business and allocated a proportionate amount of deductible interest to Schedules C and F. Petitioners' contention that all of the credit card interest was incurred for business purposes is improbable, and they have not established that they are entitled to deduct any amount greater than that allowed by respondent.

Petitioners also attempt to use self-serving and conclusory assertions rather than evidence with respect to the net operating loss carryover, demanding that respondent's representatives identify "specific documents" needed to substantiate their carryovers. Petitioners have the burden of proving the amounts of the losses and that they have not been absorbed in other years. See, e.g., Keith v. Commissioner, 115 T.C. 605, 621 (2000); Sandoval v. Commissioner, T.C. Memo.

**[\*8]** 2001-310, aff'd without published opinion, 67 Fed. Appx. 252 (5th Cir. 2003). They have not shown either, and none of the claimed carryovers may be allowed.

Penalties and Additions to Tax

Respondent has the burden of coming forward with evidence that the imposition of penalties or additions to tax is appropriate. See sec. 7491(c). Respondent has conceded the section 6651(a) addition to tax for 2001. The stipulation establishes that the tax return for 2003 was filed late, so petitioners must show reasonable cause to avoid the section 6651(a)(1) addition to tax. See sec. 6651(a)(1); Higbee v. Commissioner, 116 T.C. 438, 447 (2001). They have not done so.

Petitioners contend that they did not expect to owe any tax and thus late filing was a "moot point". However, a mistaken belief that the section 6651(a)(1) addition to tax would not apply because the taxpayers do not expect to owe any tax does not constitute reasonable cause. See Ruggeri v. Commissioner, T.C. Memo. 2008-300; Morgan v. Commissioner, T.C. Memo. 1984-384, aff'd, 807 F.2d 81 (6th Cir. 1986). They also contend that they requested consecutive extensions of more than six months for filing their 2003 return. The parties' stipulation of facts and section 1.6081-1, Income Tax Regs., refute this contention. Petitioners have

**[*9]** neither identified nor established reasonable cause to avoid the section

6651(a)(1) addition to tax for 2003.

Section 6662(a) and (b)(1) and (2) provides a penalty of 20% on the portion

of an underpayment of tax (1) due to negligence or disregard of rules or regulations

or (2) attributable to a substantial understatement of income tax. Section 6662(c)

defines "negligence" as any failure to make a reasonable attempt to comply with the

provisions of the Internal Revenue Code, and "disregard" means any careless,

reckless, or intentional disregard. The evidence of erroneous deductions and

improper allocation of depreciation and interest claimed by petitioners is sufficient

to prove negligence and satisfies respondent's burden of production.

Whether applied because of a substantial understatement of income tax or

negligence or disregard of rules or regulations, the accuracy-related penalty is not

imposed with respect to any portion of the underpayment as to which the taxpayer

acted with reasonable cause and in good faith. See sec. 6664(c)(1). The decision

as to whether the taxpayer acted with reasonable cause and in good faith depends

upon all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income

Tax Regs. Relevant factors include the taxpayer's effort to assess his or her proper

tax liability, including the taxpayer's reasonable and good faith reliance on the

advice of a professional such as an accountant. See id. Petitioners have the burden

**[\*10]** of proving reasonable cause and good faith.  See Higbee v. Commissioner, 116 T.C. at 449.  They have not done so here.

In relation to the section 6662 penalties, petitioners claim to have records with respect to their net operating loss carryovers going back to the 1980s, but they decline to organize or produce records substantiating their claims.  They have not attempted to justify the excess depreciation claimed, the misallocation of interest deductions, or the disallowed supplies expenses.  Petitioners have failed to identify or provide support for any exception to application of the penalty, and it will be applied to the recomputed underpayment amounts.

To reflect concessions and our holdings,

Decision will be entered

under Rule 155.